IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLORADO

Civil Action No.

EUNICE FERNANDES,

    Plaintiff,

v.

WAL-MART STORES, INC.,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Eunice Fernandes ("Plaintiff" or "Mrs. Fernandes"), by her attorneys, Richard O. Campbell and Margaret R. Pflueger of Campbell Killin Brittan & Ray, LLC, states and alleges as follows:

**NATURE OF THE ACTION**

1. This action is brought to vindicate violations of Plaintiff's civil rights and to redress the unlawful and discriminatory conduct and employment practices of Defendant Wal-Mart Stores, Inc. ("Defendant" or "Walmart"). This action arises from Walmart's illegal bias towards, retaliation against, and wrongful discharge of Mrs. Fernandes due to her age, race, national origin and disability.

2. Mrs. Fernandes alleges, *inter alia*, that she was terminated from her employment based, in whole or in part, upon the following: a) her age in violation of the Age Discrimination

in Employment Act of 1967, 29 U.S.C. § 621, *et seq*. ("ADEA"); b) her disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, as amended by the ADA Amendments Act of 2008 ("ADAAA"); c) her race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq., (*"Title VII") and d) in retaliation for her exercising her rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601, *et. seq*., as amended.  In this action, Plaintiff also asserts her pendant state law claims under corresponding provisions of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401 *et. seq.* and for defamation.

3. Plaintiff seeks back pay, compensatory and punitive damages, reinstatement and/or front pay, expert witness fees, reasonable attorney fees and court costs, and other relief.

**PARTIES**

4. Plaintiff is a naturalized citizen of the United States and of the state of Colorado, and a resident of the City of Aurora in the County of Arapahoe, State of Colorado.  From 2002 through 2016, Plaintiff was a former full-time employee of Defendant Walmart.

5. Defendant Walmart is a Delaware company, authorized to do business and doing business in the state of Colorado, with its registered agent, The Corporation Company, located at 7700 E Arapahoe Road Suite 220, Centennial, Colorado 80112-1268.  At all relevant times, Defendant has continuously been doing business in the State of Colorado and has continuously had at least 15 employees.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 1 l(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 42 U.S.C. §1334 (civil rights jurisdiction) and 42 U.S.C. §1367 (supplemental jurisdiction). Jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 451, 1337, 1343 and 1345. This action is further authorized and instituted pursuant to Section 7(b) of the ADEA, which incorporates by reference Section 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§216(c) and 217. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims arises out of the same operative facts as Plaintiff's federal claims and, together, they form part of the same case or controversy.

7. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because Defendant regularly conducts business in this District and the unlawful employment practices alleged herein occurred within this District.

8. Defendant is subject to, and a covered employer under, the ADA and ADAAA.

9. Defendant is subject to, and a covered employer under, the ADEA.

10. Defendant is subject to, and a covered employer under, the FMLA.

11. Plaintiff has complied with all conditions precedent to the filing of her claims in that she exhausted all administrative remedies prior to filing this suit. As a result of the unlawful employment practices alleged herein, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 14, 2016. A copy of Plaintiff's Charge is attached hereto as Exhibit A. Plaintiff's Charge culminated into a "Notice of Right To Sue" letter issued by the EEOC, which Plaintiff received

via U.S. mail on April 24, 2017. A Copy of the Notice of Right to Sue issued by the EEOC is attached hereto as Exhibit B. Plaintiff is filing this suit within 90 days of Plaintiff's receipt of the Notice of Right To Sue letter and this suit is timely filed.

## GENERAL FACTUAL ALLEGATIONS

12. Plaintiff is a 66 year old Asian woman who was born and raised in India and moved to the United States in 2002.

13. On June 4, 2002, Plaintiff was initially hired to work as an associate at Walmart's store #3566. She was later transferred to Walmart's store # 1492 and worked at Walmart store # 1492, located at 14000 East Exposition Street, Aurora, Colorado 80012, from October, 2004 through the date of her termination on December 30, 2015.

14. Plaintiff was a full-time employee at Walmart's store #1492 and was continuously employed as a Walmart "associate" from June 4, 2002 until the date of her termination.

15. Plaintiff's initial salary was $8.00 per hour.

16. Plaintiff worked eight hour shifts, five days per week.

17. Over the course of more than eleven years Plaintiff worked at Walmart #1492 there were, at all times, at least 75 other employees at this Walmart location.

18. During the more than eleven years Plaintiff worked at Walmart's store #1492, Plaintiff was primarily employed as a cashier.

19. For the more than eleven years Plaintiff worked at Walmart's store #1492, Plaintiff was always punctual, only received positive evaluations, and on no occasion was she ever reprimanded or subject to any disciplinary action.

20. For the more than eleven years Plaintiff worked at Walmart's store #1492, Plaintiff was a reliable, competent, and loyal employee. Plaintiff worked well with her colleagues and was respectful and responsive to management.

21. One of the benefits Walmart provides its employees is use of a "Walmart Discount Card", which provides employees and their families a 10% discount on merchandise purchased at the store.

22. Throughout Plaintiff's employment at Walmart, Plaintiff's husband regularly used Plaintiff's Walmart Discount Card to obtain discounts on groceries and other items. However, consistent with Walmart's policies, whenever Plaintiff's husband purchased items from Walmart store #1492, he always checked out with another associate cashier and not with Plaintiff. On occasion, when Plaintiff's husband purchased groceries, he would then give Plaintiff some of the items he had purchased to use for her lunch.

23. In or about May, 2013, pursuant to the Walmart's FMLA policy, Plaintiff submitted a "Notice of Intent to Take Paid/Unpaid Family/Medical Leave" form to Walmart's third-party benefits administrator Sedgwick Claims Management Services, Inc. ("Sedgwick") requesting intermittent leave to address issues related to her asthma. Although this request was initially approved and was later re-approved in June, 2015, Plaintiff never actually missed work due to her asthma. Instead, Plaintiff made arrangements to obtain her necessary asthma treatments on the days she was not working.

24. On August 18, 2015, Plaintiff was injured at work when she slipped and hit her cash register. Plaintiff suffered contusions to her wrist and foot. Although Plaintiff requested that she be allowed to leave work for the day, her request was refused. When Plaintiff returned

to work the next day, she told the managers on duty about her injuries, but she nonetheless was required to stand at her register until her replacement arrived at the end of her shift.

25.     On August 20, 2015, Plaintiff told her manager she could not work because she needed to see a physician with regard to the injuries she had suffered on August 18, 2015. However, Plaintiff's request to be allowed to leave work to obtain medical treatment was again denied and Plaintiff was required to work her entire shift.

26.     After Plaintiff's shift was completed, the Night Manager for store #1492 took Plaintiff to Concentra Medical Center where she was diagnosed with a contusion to her foot and a sprained wrist.   Plaintiff was given a brace/splint to wear at all times.  Plaintiff was restricted from lifting more than 5 pounds and prohibited from climbing stairs and was limited to working at the cash register for four hour shifts, with a 5-10 minute break every 1-2 hours of work to rest her foot.  The physician also prescribed physical therapy for three times per week for three weeks and occupational therapy for two times per week for two weeks.

27.     When Plaintiff returned to work the next day, August 21, 2015, she was initially allowed a temporary alternate work assignment as customer greeter.  However, one of the store managers repeatedly attempted to make Plaintiff return to work as a cashier and Plaintiff was ultimately required to assist with the self-checkout lane, which required her to repeatedly lift more than five pounds at a time.

28.     On September 16, 2015, Plaintiff's injuries were exacerbated when she slipped on some liquid on the floor before the entrance to the women's restroom at work.  Plaintiff was not allowed time off of work to obtain medical treatment for these injuries, but rather was told she

needed to go to urgent care on her own time. Thus, Plaintiff was not treated until September 24, 2015, at which time she was diagnosed with a sprained wrist, sprained ankle and thoracic sprain.

29. Despite her injuries, Plaintiff never missed a single day of work.

30. In November, 2015, Plaintiff submitted a request to Sedgwick for FMLA leave in order in connection with extensive dental treatment prescribed by her dentist which required time off work after each procedure in order to allow her to heal properly.  Despite Plaintiff having submitted a certification from her dental healthcare provider confirming the scheduled treatment, as well as a letter confirming the need for time off work, Plaintiff's request for FMLA leave was denied.

31. Then, on December 30, 2015, approximately one month after Plaintiff's request for FMLA leave was denied, one of Defendant's Customer Service Managers, without explanation, removed Plaintiff from her register five separate times during her shift purportedly for the purpose of "auditing" Plaintiff's register.  Plaintiff was surprised and confused by having her register audited five times during one shift because nothing like this had ever happened to her during her previous thirteen years of employment at Walmart.  Although Walmart's managers routinely audit cashier's registers, they do not typically do so more than one time per shift. Despite the fact that Walmart's Customer Service Manager was clearly looking to find an error by Plaintiff, he found none.

32. Later, as she was getting ready to leave work that same day, December 30, 2015, Plaintiff was abruptly stopped by another Walmart Manager, Stephanie Weaver, and told she needed to follow Ms. Weaver to the back office.

33. Ms. Weaver led Plaintiff to a room located at the back of the store and left Plaintiff with three other Walmart Managers: Ryan Flannery (an Unemployment State Consultant for Walmart); Fran Velarde (an Assistant Store Manager); and Brad Reilly (an Asset Protection Manager). After bringing Plaintiff to the store's back office, Ms. Weaver left the room.

34. Mr. Flannery, Ms. Velarde and Mr. Reilly then took turns interrogating Plaintiff. During this interrogation, which lasted approximately half an hour, Plaintiff was told by Mr. Flannery that the Managers believed Plaintiff's husband had used her Walmart Discount Card and had also requested that the store match the prices of other Walmart stores. Mr. Ryan claimed these actions constituted a violation of Defendant's company policies. Mr. Flannery then demanded that Plaintiff sign a statement acknowledging that she had had accepted goods purchased by her husband in violation of this Walmart company policy.

35. Plaintiff, exhausted from her long day at work, agreed to sign a statement but she was only willing to acknowledge that her husband had used her Walmart Discount Card and that he had given Plaintiff bananas and bread he had purchased using the discount. Plaintiff did not admit to any wrongdoing or that anything she, or her husband had done constituted a violation of any Walmart company policy. Mr. Flannery and Mr. Reilly then took Plaintiff's purported "statement" to the Store Manager James Sandoval.

36. Meanwhile, Ms. Weaver returned to the back office and Ms. Velarde and Ms. Weaver proceeded to fill out employee discharge paperwork and asked Plaintiff to return her employee badge and coat.

37. Plaintiff was not given any written or verbal explanation as to why she was being discharged.

38. Although she was not present at this meeting, Athena Schumacher, Plaintiff's Immediate Supervisor, later signed Plaintiff's discharge form as a "witness".

39. For more than ten days, Plaintiff had no idea why she had been discharged from her employment at Walmart. Then, on January 9, 2016, Plaintiff received a copy of her "Exit Interview" which indicated that she had been discharged for "gross misconduct". Upon receiving a copy of the "Exit Interview" accusing her of "gross misconduct", Plaintiff repeatedly contacted Walmart's Manager Chris Wallace, who was responsible for Walmart's "Open Door" policy, seeking an explanation for the "gross misconduct" allegation. Mr. Wallace never returned any of Plaintiff's telephone messages.

40. Plaintiff's salary at the time of her discharge was $13.16 per hour and Plaintiff was working eight hour shifts five days per week. At the time of her termination, due to her long term employment with Walmart, Plaintiff was making approximately five dollars per hour more than Defendant's younger newly hired employees and was in-line to receive a lifetime discount card.

41. On January 29, 2016, Plaintiff was advised by the Colorado Division of Unemployment that her request for unemployment insurance benefits had been denied because Walmart had charged her with theft. Defendant had advised the Division of Unemployment that Plaintiff had stolen one item worth $50 and that she had signed a "confession".

42. Plaintiff appealed Walmart's denial of unemployment insurance benefits.

43. At the March 9, 2016 Division of Unemployment Insurance hearing on Plaintiff's appeal, Defendant changed its justification for denying Plaintiff benefits and claimed that Plaintiff was discharged because she had accepted merchandise from her husband which had been purchased with an improper price over-ride. The Division of Unemployment Insurance hearing officer, however, found that: "There was simply no persuasive evidence to demonstrate that the claimant was in any way involved in any improper purchases or that she instructed her husband to improperly purchase the items." The hearing officer further found that her statement made on December 30, 2015 did not constitute an admission of guilt. The hearing officer further concluded she found Plaintiff's testimony to be "wholly credible" and that Plaintiff was "not guilty of any wrongdoing" and had not violated any company policies.

44. Upon information and belief, after Plaintiff's termination, her positon as a Walmart associate was filled with a substantially younger and lower salaried employee.

45. On June 14, 2016, Plaintiff filed her Charge with the EEOC. See Exhibit A.

46. In response to Plaintiff's Charge, Walmart changed its story for a third time and alleged that Ms. Fernandes was terminated because another Walmart employee did not ask Ms. Fernandes' husband for coupons to support his request that Walmart match the prices offered by other stores on certain grocery items, like bananas. According to Walmart, this time, Ms. Fernandes' own alleged "gross misconduct" consisted solely of accepting some of the grocery items, *i.e.* bananas and bread, purchased by her husband for her lunch.

47. On April 24, 2017, the EEOC issued a "Notice of Right To Sue" to Plaintiff. See Exhibit B.

48. Plaintiff is filing this suit within 90 days of Plaintiff's receipt of the Notice of Right To Sue letter.

49. The above acts and omissions have caused and will continue to cause, resultant and consequential economic and non-economic damages and losses to Plaintiff, including, without limitation: lost income and benefits, attorney fees, litigation costs, and other injuries, damages and losses all in an amount to be proven at trial.

## FIRST CLAIM FOR RELIEF
### (Age Discrimination in Violation of the ADEA)

50. Plaintiff incorporates and reiterate the above allegations as though fully set forth herein.

51. Plaintiff is over the age of 40 and therefore Plaintiff is an individual protected by the provisions of the ADEA.

52. Defendant engaged in unlawful employment practices at its Walmart store #1492 in violation of Section 623(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), by terminating Ms. Fernandes' employment on account of her age and thereby violated her right to equal employment opportunity as protected by the ADEA.

53. The effect of the discriminatory practices complained of above has been to deprive Ms. Fernandes of equal employment opportunities and otherwise adversely affect her status as an employee because of his age.

54. The unlawful employment practices complained of above were intentional.

55. The unlawful employment practices complained of above were done with malice or with reckless indifference to Plaintiff's federally protected rights.

56. Plaintiff has been damaged by Defendant's illegal conduct in that she has suffered emotional distress and economic damages.

## SECOND CLAIM FOR RELIEF
### (Disability Discrimination in Violation of the ADA and ADAAA)

57. Plaintiff incorporates and reiterate the above allegations as though fully set forth herein.

58. Plaintiff's disabilities substantially limit one or more of Plaintiff's major life activities.

59. Plaintiff is a disabled individual protected by the provisions of the ADA and ADAAA.

60. Plaintiff made multiple requests to Defendant to accommodate Plaintiff's disabilities, and despite said requests, Defendant failed to accommodate Plaintiff's disabilities.

61. Plaintiff was subject to discriminatory treatment during the course of her employment by Defendant on the basis of Plaintiff's disabilities.

62. Defendant discriminated against Plaintiff with respect to the compensation, terms, conditions and privileges of Plaintiff's employment on the basis of Plaintiff's disabilities.

63. Plaintiff has been damaged by Defendant's illegal conduct in that she has suffered emotional distress and economic damages.

64. Defendant's conduct was outrageous and showed an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and, therefore, punitive damages are warranted against Defendant to punish and deter it from such conduct.

### THIRD CLAIM FOR RELIEF
### (Retaliation in Violation of the ADA and ADAAA)

65. Plaintiff incorporates and reiterate the above allegations as though fully set forth herein.

66. Plaintiff is an individual protected by the provisions of the ADA and ADAAA.

67. Plaintiff made multiple requests to Defendant to accommodate Plaintiff's disabilities, and despite said requests, Defendant failed to accommodate Plaintiff's disabilities.

68. Plaintiff was subject to discriminatory treatment during the course of her employment by Defendant on the basis of her disabilities.

69. Plaintiff complained to Defendant of said discriminatory treatment.

70. Defendant terminated Plaintiff's employment with Defendant, and said termination constitutes an adverse employment action suffered by Plaintiff.

71. Plaintiff suffered this adverse employment actions as a result of her requests for accommodation, and said requests constitute protected activity under the ADA.

72. Plaintiff has been damaged by Defendant's illegal conduct in that she has suffered emotional distress as well as economic damages.

### FOURTH CLAIM FOR RELIEF
### (Retaliation in Violation of the FMLA)

73. Plaintiff incorporates and reiterate the above allegations as though fully set forth herein.

74. Plaintiff is informed and believes, and on that basis alleges, that Walmart qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that Plaintiff is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

75. Plaintiff's request for intermittent accommodation constituted protected activity under the FMLA.

76. The FMLA forbids employers from discriminating or retaliating against an employee who has exercised or attempted to exercise an FMLA right.

77. Defendant violated this FMLA proscription by terminating Plaintiff's employment in response to her request for intermittent FMLA leave.

78. Plaintiff has been damaged by Defendant's illegal conduct in that she has suffered emotional distress as well as economic damages.

## FIFTH CLAIM FOR RELIEF
(Race and National Origin Discrimination in Violation of Title VII)

79. Plaintiff incorporates and reiterate the above allegations as though fully set forth herein.

80. Defendant terminated Plaintiff's employment on account of her race (Asian) and national origin (Indian) and thereby violated her right to equal employment opportunity as protected by Title VII.

## SIXTH CLAIM FOR RELIEF
(Discrimination in Violation of C.R.S. § 24-34-401)

81. Plaintiff incorporates and reiterate the above allegations as though fully set forth herein.

82. Defendant terminated Plaintiff's employment on account of her age, race and national origin, and disabilities in violation of his right to equal employment opportunity as protected by Colorado Anti-Discrimination Act ("CADA") C.R.S. § 24-34-401 *et. seq.*

## SEVENTH CLAIM FOR RELIEF
### (Defamation)

83. Plaintiff incorporates and reiterate the above allegations as though fully set forth herein.

84. In both the "Exit Interview" and in its response to Plaintiff's request for unemployment insurance benefits, Walmart communicated and published to third persons, including without limitation representatives of the Department of Unemployment Insurance, statements about Plaintiff, accusing her of "theft" and claiming that Plaintiff had "confessed" to the crime of theft.

85. These statements are false and were false at the time they were published.

86. These false statements were made by Defendant with the intention of affecting the view of the others, including without limitation representatives of the Department of Unemployment Insurance.

87. These statements were presumably included by Defendant in Plaintiff's employee file. As such, these statements have affected, and will continue to affect, the view of others Walmart employees, as well as entities or individuals with whom Plaintiff seeks employment in the future.

88. These statements have harmed Plaintiff's reputation and lowered her esteem in the estimation of her community and have likely deterred third persons from associating or dealing with her.

89. At the time of publication of these statements, Defendant either knew that the statements were false or made the statements with willful and wanton and/or reckless disregard as to whether they were false.

90. The above statements were defamatory *per se* because they defamed Plaintiff in her trade, business, and profession and were intended to expose Plaintiff to public contempt.

91. As a result of the above communications, Plaintiff has suffered, and continues to suffer damages including impairment of her reputation, personal humiliation and emotional distress.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A. Awarding Plaintiff such actual, compensatory, consequential, and incidental damages as she has suffered as a result of the above described wrongful conduct alleged in each of the Claims for Relief set forth above, together with pre-judgment, post-judgment interest;

B. Awarding punitive damages based on Defendant's actions which were in reckless or callous indifference to Plaintiff's federally protected rights and based on Defendant's defamation of Plaintiff;

C. Awarding attorneys' fees and costs Plaintiff has incurred, and will incur in this action, including expert witness fees, pursuant to 42 U.S.C. § 1983 and 1988 and the Colorado Wage Claim Act;

D. Awarding such other and further relief, as is necessary and appropriate to remedy the harms inflicted by the Defendant and losses incurred by Plaintiff, including without limitation all applicable penalties available pursuant to C.R.S. § 8-4-109, so as to fully and properly vindicate Plaintiff's cognizable rights and interests.

## JURY DEMAND

**Plaintiff request a trial to jury on all issues so triable.**

Respectfully submitted this 29th day of June, 2017.

        **CAMPBELL KILLIN BRITTAN & RAY, LLC**

        By: *s/ Margaret R. Pflueger*
             Margaret R. Pflueger, #39780
             Richard O. Campbell, #3257

        ATTORNEYS FOR PLAINTIFF
        EUNICE FERNANDES